WILLIAM H. DOUGLASS *vs.* THE PECK AND LINES COMPANY ET AL.

Third Judicial District, New Haven, June Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and BENNETT, Js.

One who employs an independent contractor to do certain work is not liable, as a general rule, for injuries to others caused by the negligent performance of the undertaking.

This rule, however, has several exceptions, one of which—relied upon by the plaintiff in the present case—is that the original employer becomes responsible if he interferes with the contractor and assumes control over the work himself.

In the present case the plaintiff, a painter who was employed by an

Douglass *v.* Peck & Lines Co.

independent contractor, while at work painting at or near the bottom of an elevator shaft, received personal injuries due to the movement of the elevator. Another independent contractor was engaged in installing the elevator, and it was operated at the time of the injury by a representative of the installing company. The owner of the building and the company which was installing the elevator were made defendants. In its charge the trial court instructed the jury that the owner of the building was bound to use reasonable care to see to it that the elevator shaft remained in a safe condition so long as the plaintiff was at work in it. *Held* that this instruction, which must have been understood as referring to the place as unsafe solely because of the movement of the elevator, was erroneous and prejudicial to the defendant owner, inasmuch as the relation of master and servant, to which such a direction would have been appropriate, did not exist between the parties; and that no such duty as the instruction called for rested upon the owner of the premises, apart from any that might arise from his alleged express assurance to the plaintiff that the elevator should not be run.

The owner of premises is not responsible to an independent contractor for injury from defects or dangers known to, or which should have been known to, the contractor; but if the defect or danger is hidden and is known to the owner but not to the contractor, and is not such an one as the latter ought to be aware of, it then is the duty of the owner to warn the contractor, otherwise he is liable for the resultant injury; and this rule applies to the subcontractor as well as to the general contractor, and to the servants of each. For injury caused by his own negligence the owner of premises is liable to such servants, whether he remain in partial use of the premises or not.

The jury were further instructed in the present case that if the representative of the independent contractor operated the elevator at the request of a servant or agent of the defendant owner in order to facilitate his business, such representative was acting for and in behalf of the defendant owner, and if in so doing he was negligent and the plaintiff was free from contributory negligence, the latter was entitled to recover. *Held* that this was practically equivalent to an instruction that the defendant owner was negligent, and was erroneous for that reason; and furthermore because it did not appear from the record that the servant or agent of the defendant owner had any authority to make the request, nor that in acceding to it the representative of the independent contractor had ceased to act as such representative and had become the servant or agent of the defendant owner.

The parties were at issue as to the way in which the injury occurred, the plaintiff claiming that his foot was crushed by the descending weights as the elevator rose to the top floor of the building, while the defendant owner contended that the plaintiff observed the

weights as they came down the runway and avoided them, and was injured shortly afterward as the weights rose and that such injury was due to his own negligence. This difference was referred to by the trial court only in that part of its charge which related to the claim of contributory negligence, where it was suggested to the jury that they might not find it of much importance whether the plaintiff was injured by the descending or ascending elevator weights. *Held* that this instruction, as the jury probably understood it, virtually removed from their consideration a fact of great consequence as bearing upon the question of contributory negligence.

Argued June 8th—decided July 27th, 1915.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, brought to the Superior Court in Fairfield County and tried to the jury before *Webb, J.;* verdict and judgment for the plaintiff for $1,200, as against the Peck and Lines Company only, from which that defendant appealed. *Error and new trial ordered.*

The Hubbell Company were general contractors, and were engaged in making extensive repairs upon the building and garage of the defendant the Peck and Lines Company. The plaintiff's brother, George A. Douglass, had contracted with the Hubbell Company to paint this garage and building, including the interior of the elevator shaft. The defendant the Eastern Machinery Company, under contract with the Peck and Lines Company, had been engaged in installing a freight elevator in this building, and were at this time placing safety-gates on the floors of the building.

On July 15th, 1913, the plaintiff, an employee of said George A. Douglass, went to these premises to complete the painting of the elevator shaft. The elevator was a balance elevator, and when its platform descended the weights of the elevator ascended, and conversely when the platform ascended the weights descended. The weights were enclosed in a wooden case at the side of

the shaft, which was covered by crosspieces of wood about six inches wide and the same distance apart.

Before beginning to paint the elevator shaft, the plaintiff had a conversation with Mr. Peck, the president of the Peck and Lines Company. These facts were not in dispute. What was said was in dispute. The plaintiff claimed that he told Mr. Peck that he had come to paint the shaft, under instruction from his employer, Mr. Douglass, not to go in the elevator shaft unless the Peck and Lines Company would see that the elevator was not operated while he was at work; and that thereupon Mr. Peck assured him such order would be given, and forthwith so instructed Watson, the employee of the Eastern Machinery Company, and thereupon the plaintiff, relying upon this assurance, began work in the shaft below the elevator floor. The defendant the Peck and Lines Company claimed to have proved that the plaintiff told Mr. Peck he was about to begin work, and requested his company not to run the elevator while he was so at work; and that Mr. Peck thereupon asked Watson if it was necessary to run the elevator, and Watson replied "yes," but he would not run it below the first floor, and Mr. Peck repeated to the plaintiff what Watson had said, and the plaintiff replied, "Yes, all right," and began work.

The plaintiff further claimed to have proved that to facilitate his work he stepped upon one of the crosspieces in the front of the wooden case, so that his foot extended into the elevator runway in such way as to be in the path of the descending weight, and supported himself by holding with his hand to another crosspiece, and, while so situated, without warning, the elevator was raised to the fourth floor, the weight swiftly descended upon his foot, permanently injuring it; and that the elevator was operated at this time under the direction and for the benefit of the Peck and Lines Com-

pany, and the person operating it, as well as the Peck and Lines Company, knew that the plaintiff was then in the elevator shaft.

The Peck and Lines Company claimed to have proved: that the plaintiff stood with both feet upon the crossbars; that Watson was requested by an agent of the Peck and Lines Company to raise the elevator to the top floor and bring down a wagon to the second floor; that thereupon Watson raised the elevator to the top floor, and as the weights descended the plaintiff stepped off the crosspieces on to a staging, and after the weights had descended below the plaintiff, he stepped back upon the crosspieces; that Watson, not knowing the plaintiff was standing upon the crosspieces, lowered the elevator a few inches, thereby catching and injuring the plaintiff's foot; that the Peck and Lines Company had no control over the elevator or its shaft.

The plaintiff further claimed that the Peck and Lines Company was in possession and control of the said premises, and that his injuries were caused by the negligence of that company and of the person operating the elevator, to which he, the plaintiff, did not contribute.

The Peck and Lines Company claimed that the injuries to the plaintiff were not caused by its negligence, but were caused by the contributory negligence of the plaintiff.

*Carl Foster*, for the appellant (defendant The Peck and Lines Company).

*Robert E. DeForest* and *Robert G. DeForest*, for the appellee (plaintiff).

WHEELER, J. The Hubbell Company were general contractors engaged in alterations and repairs upon the premises of the defendant the Peck and Lines Company. They sublet the painting contract to one Douglass. The

Eastern Machinery Company was engaged, under a contract with the Peck and Lines Company, in installing an elevator in the progress of these alterations. The Hubbell Company, Douglass, and the Eastern Machinery Company were admittedly independent contractors.

As a general rule, the contractee or proprietor is not liable, for injuries caused by an independent contractor or his servants, to any one. *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 293, 299, 85 Atl. 514. To this general rule there are exceptions, among them these: If the work contracted for be unlawful, or such as may cause a nuisance, or is intrinsically dangerous, or in its nature is calculated to cause injury to others, or if the contractee negligently employ an incompetent or untrustworthy contractor, or if he reserve in his contract general control over. the contractor or his servants, or over the manner of doing the work, or if he in the progress of the work assume control or interfere with the work, or if he is under a legal duty to see that the work is properly performed, the contractee will be responsible for resultant injury. *Norwalk Gas Light Co.* v. *Norwalk*, 63 Conn. 495, 28 Atl. 32; *Lawrence* v. *Shipman*, 39 Conn. 586; *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 293, 85 Atl. 514; *St. Paul Water Co.* v. *Ware*, 83 U. S. (16 Wall.) 566; *Creed* v. *Hartmann*, 29 N. Y. 591. So, too, the contractee or proprietor will be liable for injury which results from his own negligence. *Lawrence* v. *Shipman*, 39 Conn 586, 590.

Unless this case falls within one of these exceptions, or the injury resulted from the negligence of the Peck and Lines Company, that company cannot be held liable for the injury to the plaintiff.

The real case of the plaintiff, upon the facts as claimed by him, was that before he went into the elevator shaft to work, the president of the Peck and Lines Company gave him assurance that the elevator

should not be operated while he was thus at work. If the jury found that this assurance had been given, and that the injury occurred through the operation of the elevator by Watson, the employee of the Eastern Machinery Company, there was ample ground for finding the Peck and Lines Company negligent; not because Watson had become the employee or agent of the Peck and Lines Company, but because that company had interfered with the work and assumed the duty of seeing that this elevator was not operated.

The court repeatedly instructed the jury that the Peck and Lines Company owed to this plaintiff the primary duty of seeing to it that the place where the plaintiff was at work should be kept in a safe condition. Thus it charged: "It was the duty of the defendant the Peck and Lines Company, to afford a safe place for the plaintiff to do his work, and to use all reasonable care and prudence to see to it, that the premises remained in a safe condition so long as the plaintiff continued his work in this elevator shaft. . . . These two things, perhaps, it is important that you should keep in mind during all of your deliberations, as I have stated, that upon the Peck and Lines Company, the owner of these premises, there rested the primary duty of seeing to it that the place where the plaintiff was employed should be kept in a safe condition, and should do all that you could reasonably expect a prudent and cautious man would do under all of the circumstances, to see to it that the place was kept in a safe condition, and that neither its own servants or employees nor any other person employed upon the premises should do anything that would endanger the plaintiff's safety while he was there employed, that is, they were to exercise, in order to secure his safety, such caution and prudence and care as you would expect a man of ordinary prudence and care to exercise under the circumstances."

The Peck and Lines Company owed the plaintiff no such duty. This rule of duty would have been applicable if the relation of master and servant had existed between the plaintiff and this company; but no such relation existed. *Wilmot* v. *McPadden*, 79 Conn. 367, 370, 65 Atl. 157; 1 Labatt on Master & Servant (2d Ed.) § 34. And no such duty was owed by this company to the plaintiff, an employee of an independent contractor of the general contractor. The place in which the plaintiff was working was not unsafe until the elevator was operated. Unless this defendant had promised the plaintiff not to operate the elevator, no duty rested upon it to see that the elevator was not operated.

There was no basis for a claim of negligence against the Peck and Lines Company unless Watson was the servant of that company and it was responsible for his negligent act, or unless the Peck and Lines Company assumed the duty of seeing that the elevator was not operated, by its president, Mr. Peck, promising that it should not be run, and the plaintiff began work in reliance upon this assurance.

The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor and to the subcontractor and his servants.

Whether the owner remain in partial use of the premises or not, he is liable for injury caused to the contractor or his servants by his own negligence. So, too, he is liable for failure to perform any positive duty

imposed by law. If the failure to give this warning, or to refrain from negligent conduct, or to obey the law, makes the place where the contractor or his servant is working not a safe place, in this sense it may be said the owner owes the duty of keeping the place where the contractor or his servants are at work safe. The court's charge had reference to none of these situations. It must have been understood as referring to the operation of the elevator as making the place unsafe. The Peck and Lines Company owed no duty to the plaintiff, irrespective of its assurance, to see that the elevator was not run and that the place he was at work was safe. It could not be held liable for the negligence of Watson, a servant of a subcontractor, resulting in making the place where the plaintiff was at work unsafe and causing him injury in consequence, since Watson was not the servant of the Peck and Lines Company. *Wilmot* v. *McPadden*, 79 Conn. 367, 370, 375, 65 Atl. 157; *Wilmot* v. *McPadden*, 78 Conn. 276, 61 Atl. 1069; *Reilly* v. *Chicago & N. W. Ry. Co.*, 122 Iowa, 525, 528, 98 N. W. 464; *Callan* v. *Pugh*, 54 N. Y. App. Div. 545, 547, 66 N. Y. Supp. 1118; Thompson's Commentaries on Negligence (White Supp.) § 979; *Burke* v. *Norwich & W. R. Co.*, 34 Conn. 474, 481; *Lawrence* v. *Shipman*, 39 Conn. 586, 589; *Sesler* v. *Rolfe Coal & Coke Co.*, 51 W. Va. 318, 322, 41 S. E. 216; *Stevens* v. *United Gas & Electric Co.*, 73 N. H. 159, 60 Atl. 848. The charge in this particular was erroneous, and not adapted to the case before the jury.

The court further charged that if the jury found that Watson operated the elevator at the request of a servant or agent of the Peck and Lines Company in order to facilitate its business, he was acting for and in behalf of that company, and if in so doing he was negligent, and the plaintiff was free from contributory negligence, he was entitled to recover against that company.

The injury to the plaintiff admittedly occurred through the operation of the elevator by Watson when he knew the plaintiff was at work in the elevator shaft, at the request of a servant or agent of the Peck and Lines Company and for its benefit. This was practically equivalent to an instruction that that company was negligent, and was erroneous. The authority of the Peck and Lines Company's servant or agent to request this service of Watson was not referred to by the court. There is nothing in the record to indicate that this servant or agent had authority to request such service. It appears to have been a voluntary act of Watson's to accommodate the servant or agent of the Peck and Lines Company. This falls far short of making Watson in what he did either the servant or agent of this company. He was at that time engaged upon the work of the Eastern Machinery Company, and was not under the control or direction of the Peck and Lines Company, and did not cease to be the servant or agent of his own employer and become the servant or agent of the Peck and Lines Company.

The plaintiff claimed that he was injured by the descending elevator weights crushing his foot as it rested upon the crosspiece of the runway enclosing the weights. The Peck and Lines Company claimed that as the weights descended when the elevator was raised the plaintiff stepped off the crosspiece, and that afterward he stepped back upon the crosspiece, and as the elevator was lowered the weights ascended and caught and injured his foot. Upon the claim of contributory negligence the question of whether the plaintiff's foot was caught by the descending or ascending weight was of consequence. If by the descending weight, he had little or no notice of the operation of the elevator and little or no opportunity to withdraw his foot. If by the ascending weight, he knew that the elevator had

just been operated, and whether it was negligent for him, immediately after the weight had descended, to step back upon the crosspiece and in the way of the weights if they should be raised, was a fair question for the jury. Concerning this divergence in the testimony the court charged: "I don't know that you will find that difference in the testimony very important. It is not ultimately very important, because, if you find that there was negligence on the part of these defendants, that is, on the part of the Peck and Lines Company, in not furnishing a safe place and doing everything that reasonably prudent men ought to have done, to continue the safety of the place, and if you shall find that Watson, as the agent of the Eastern Machinery Company, in the employ, and while engaged in some work of operation in behalf of his principal, the Eastern Machinery Company, was negligent in operating the elevator, whether the injury was caused by the weight ascending, or the weight descending, is perhaps not of very much moment."

This reference to whether the weight was ascending or descending occurs in a part of the charge devoted to the issue of the contributory negligence of the plaintiff, and in no other part of the charge is it otherwise referred to or explained. We fear the jury must have regarded the court's statement as applicable to the issue of contributory negligence; if so, it removed from their consideration a fact whose determination was of great weight upon this issue. We think this was error, and may have prejudiced the Peck and Lines Company.

It is unnecessary to consider the other grounds of the appeal.

There is error and a new trial is ordered.

In this opinion the other judges concurred.