ANNE REBONI, ADMINISTRATRIX (ESTATE OF PRIMO REBONI), ET AL. *v.* CASE BROTHERS, INC., ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued November 8, 1950—decided February 13, 1951

*Cyril Coleman,* with whom was *Bradley Bates,* for the appellant (named defendant).

*Dennis P. O'Connor,* with whom were *John W. Joy* and *Nathan Aaron,* for the appellees (plaintiffs).

JENNINGS, J. This is an action for damages for the death by electrocution of the named plaintiff's intestate, Primo Reboni, and for the injury by electric burning of the plaintiff Clarence E. Snow. Snow and Reboni will be referred to as the plaintiffs. The accident occurred on October 29, 1946, in East Hartford

in the factory yard of the named defendant, hereinafter referred to as the defendant. The trial resulted in a verdict for the plaintiffs against the defendant and E. W. Canning, a general contractor. The defendant's motion to set aside the verdict was denied, but that of the codefendant Canning was granted on the ground that as against him the plaintiffs were restricted to their rights under the Workmen's Compensation Act. The plaintiffs did not appeal. The defendant appealed from the ruling of the trial court on the motion and from the judgment.

The jury reasonably could have found the following facts: The defendant is a manufacturer of paper with a factory in East Hartford. It planned to rebuild its boiler house and let the general contract to E. W. Canning. He was an independent contractor and sublet a portion of the work to the Alexander Jarvis Company of Manchester. The plaintiffs were employed by the latter. The defendant retained general control of its plant and continued operation of it during the reconstruction. The work, as the defendant well knew, was to be done by Canning without shutting off the power. An elevated electric power line comprising three high tension wires ran from a pole above a portion of the factory yard at a height of forty to forty-five feet. The line dropped to a tower twenty to twenty-five feet high and thence to transformers. The transformers were surrounded by a high guard fence on which were signs reading "Danger High Voltage."

On the morning in question, Taggart, an employee of the Jarvis Company, and Reboni brought a crane with a sixty-foot boom to the yard of the defendant and used it to place some beams on the roof of the boiler house. A twenty-foot jib had been attached to the boom to give it greater length. The work was done from positions which involved no possibility of contact between

the crane and the high tension wires. Thereafter, for reasons which do not appear, the crane was moved forward into the factory yard under the high tension wires. This part of the work was completed before lunch. After lunch, Taggart and the plaintiffs returned to the factory yard to detach the jib from the boom and to place it on a truck parked by Snow alongside the boom. The jib was detached and Taggart raised it by means of the boom to put it on the truck. The jib came in contact with a trestle. The plaintiffs disengaged it and were guiding it to its resting place on the truck. This necessitated their climbing over piles of junk and refuse. It was while they were so engaged that the accident occurred. The top of the boom came into close proximity with the high tension wires. Current from the wires passed down the cable by which the jib was suspended and caused the injuries of the plaintiffs. Taggart was familiar with the danger of working in the proximity of high tension wires in general, had been informed of the danger from the wires in question and had had personal experience with them on a previous occasion.

The wires were owned by the Hartford Electric Light Company and at the point in question were about forty-five feet above the ground. It would have been good practice to have shut off the current while the work was being done, but neither the defendant nor Canning could do this. A request by the defendant if made to the Hartford Electric Light Company would probably have accomplished it.

The plaintiffs were invitees or business visitors to whom the defendant owed the duty of reasonable care for their safety. *Stevens* v. *United Gas & Electric Co.*, 73 N. H. 159, 171, 60 A. 848; *Standard Steel Car Co.* v. *McGuire*, 161 F. 527, 530, 88 C. C. A. 469; *Craig* v. *Riter Conley Mfg. Co.*, 272 Pa. 219, 221, 116 A. 167;

*Brown* v. *American Steel Foundries,* 272 Pa. 231, 235, 116 A. 546; *Heyse* v. *Philadelphia Electric Co.,* 248 Pa. 99, 102, 93 A. 877; *Indermaur* v. *Dames,* L. R. 1 C. P. 274, 285; Pollock, Torts (14th Ed.) p. 409 et seq.; note, 44 A. L. R. 932, 982. Where the danger may extend to taking life, reasonable care is very great care. *Cutler* v. *Putnam Light & Power Co.,* 80 Conn. 470, 476, 68 A. 1006; *Commonwealth Trust Co.* v. *Carnegie-Illinois Steel Co.,* 353 Pa. 150, 153, 44 A. 2d 594; *Ashby* v. *Philadelphia Electric Co.,* 328 Pa. 474, 478, 195 A. 887. In the case at bar, the plaintiffs were performing a difficult and laborious task under unsafe conditions. The defendant had retained control of the premises. The jury could have found that it was required to at least attempt to kill the current in the high tension wires for the short period of the plaintiffs' activities. They could also have found that the defendant not only did not do this but required the contractor to do his work without interrupting that of the defendant by shutting off the power.

The defendant claims that the plaintiffs are barred from recovery because, if their injuries were due to the negligence of anyone, the negligence was that of a fellow servant. The fellow servant rule practically disappeared with the adoption of workmen's compensation. *Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 159, 194, n., 39 A. 115. It is still operative in a proper case. Ibid. The plaintiffs and Taggart were fellow servants. *Messinger* v. *New York, N. H. & H. R. Co.,* 85 Conn. 467, 472, 83 A. 631. They were not the servants of the defendant. *Burke* v. *Norwich & W. R. Co.,* 34 Conn. 474, 480. Furthermore, the negligence relied on was not that of Taggart but that of the defendant. The doctrine does not apply under these circumstances. *Messinger* v. *New York, N. H. & H. R. Co.,* supra, 476.

The defendant pleaded contributory negligence but did not pursue the defense in its brief. It is obvious that the jury could have found for the plaintiffs on this issue. See discussion of the *Ashby* case in *Commonwealth Trust Co.* v. *Carnegie-Illinois Steel Co.,* supra, 154. There was no error in denying the motion to set aside the verdicts.

In its appeal from the judgment, the defendant made an unusually elaborate attack on the finding. This is a jury case and such attacks are rarely justified. *Cornwell* v. *Rosoff,* 137 Conn. 458, 460, 78 A. 2d 544. No change is required which will advantage the defendant. The statement of facts fairly describes the plaintiffs' claims of proof. Additional claims of the defendant were that the crane actually hit the wires, that the jib could have been dismantled in a safe place and that the defendant had no control over the wires.

The defendant makes an extensive attack on the charge, but the exceptions, based on the written and oral requests, can be generalized. They amounted to a request to charge that the only duty resting on the defendant was to warn the plaintiffs of a hidden danger and, specifically, that there was no duty to attempt to have the wires de-energized. The defendant's claim that the second issue was not raised by the pleadings is without merit. The duty to warn of a hidden danger was charged. The trial court refused to charge that this was the only duty. On the contrary, it charged that it was for the jury to say "whether, in [the defendant's] general duty of using reasonable care . . . [it] should have . . . taken some step such as calling the Electric Light Company to bring about the de-energization of those wires."

The defendant relies on a dictum in *Douglass* v. *Peck & Lines Co.,* 89 Conn. 622, 629, 95 A. 22, reading as follows: "The owner of premises is not responsible to

an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor and to the subcontractor and his servants." This statement was not applicable to the facts of the case cited because the injury there complained of was not due to the condition of the property. It applies to a situation where the contractor has control of that portion of the premises where the accident occurs. It does not apply where the owner has retained or assumed control thereof. The complaint of the defendant is based on the refusal of the trial court to limit the duty of the defendant to one of warning of a hidden danger. In the case at bar, the owner was in possession and control, and the statement in the *Douglass* case does not apply.

The plaintiffs were entitled to rely on the further direct statement in the *Douglass* case (p. 629), also contained in the charge: "Whether the owner remain in partial use of the premises or not, he is liable for injury caused to the contractor or his servants by his own negligence." The complaint charged and the claims of proof were that the plaintiffs' injuries were due to the defendant's negligent act of omission.

The discussion of liability in connection with the ruling on the motion to set aside the verdict and the cases there cited are applicable here. The claims of proof indicated the high degree of danger in, and the fatal results which might follow, the operation attempted by the Jarvis Company. Under these circumstances, the trial court was not in error in leaving to the jury the question whether the defendant, in

failing to take steps to secure the de-energization of the wires, had violated the duty of due care which it owed the plaintiffs.

The plaintiffs in rebuttal called an engineer to testify concerning the steps necessary to kill the current in the high voltage wires. The defendant claimed the evidence was not rebuttal and was irrelevant. The admission of evidence in rebuttal is ordinarily within the court's discretion. *DiMaio* v. *Panico,* 115 Conn. 295, 298, 161 A. 238. If the issue was in the case, the evidence was highly relevant.

There is no error.

In this opinion the other judges concurred.