**AMERICAN MUT. LIABILITY INS. CO. v. JARVIS et al.**

Civ. No. 3639.

United States District Court D. Connecticut.

Jan. 28, 1953.

Cyril Coleman, J. Read Murphy, of Day, Berry & Howard, Hartford, Conn., for plaintiff.

Robert L. Halloran (of Halloran, Sage & Phelon), Hartford, Conn., for defendants.

SMITH, District Judge.

Plaintiff, liability insurance carrier for Case Brothers, Inc., seeks as Case's subrogee to recover from Jarvis the amount of judgments, costs and expenses paid by

plaintiff as a result of suits by Reboni, administratrix of Primo Reboni and Snow, injured on Case's premises.

Reboni and Snow were employees of Jarvis, subcontractor of Canning the general contractor rebuilding a boiler house for Case. The men, injured on October 29, 1946, were working with a crane operated by Taggart, an agent of Jarvis, the boom of which crane Taggart negligently allowed to come too close to a high tension power wire.

Glens Falls Indemnity, Jarvis' compensation insurance carrier, paid Reboni's estate $3,175 under the Workmen's Compensation Act, Gen.St.1949 Conn. § 7416 et seq., and paid compensation to Snow.

Reboni's administratrix and Snow sued Case and Canning, obtaining verdicts against both. The verdict against Canning was set aside, the workmen's Compensation Act being ruled applicable to him. After the suit was brought the then plaintiffs agreed to repay Glens Falls out of any judgments recovered, and Glens Falls and Jarvis elected not to join as plaintiffs in the action.

The judgments in the amount of $6,300 were paid shortly after affirmance on appeal February 15, 1951, in Reboni v. Case Bros., Inc., 137 Conn. 501, 78 A.2d 887, and thereafter the obligations of the Reboni estate and Snow to Glens Falls were compromised by the payment by the Reboni estate of $1,000, and by an agreement by Snow to waive any claims he might have for future payments under the Act, Snow to retain what Glens Falls had already paid him.

This action was brought February 11, 1952.

Defendant denies liability as a primary tort-feasor, an indemnitor, and sets up the statute of limitations, res judicata, and a claim that the Workmen's Compensation Act absolves Jarvis from liability in this action.

The parties agree that Connecticut recognizes the right of indemnity by one guilty only of passive negligence against the active tort-feasor as an exception to the general rule that there can be no contribution or indemnity between joint tort-

feasors. Preferred Accident Ins. Co. v. Musante, Berman & Steinberg Co., 133 Conn. 536, 52 A.2d 862; Fidelity & Casualty Co. v. Jacob Ruppert, Inc., 135 Conn. 307, 63 A.2d 849.

Application of the rule to the facts of this case is however in sharp dispute.

■ We may look to the Superior Court file, in the original action, in evidence here, and to its interpretation by the Supreme Court of Errors, to ascertain the basis upon which Case was held liable, although the prior judgment is not res judicata here, and the present case is to be decided independently of the pleadings or findings in the original action. Preferred Accident Ins. Co. v. Musante, Berman & Steinberg Co., supra, 133 Conn. at page 540, 52 A.2d 862.

The record in the state court action reveals that the verdict against Case was based not only on its obligation to use reasonable care to maintain its premises in safe condition for business visitors as well as to warn of hidden defects, but on its failure to take steps to have the power shut off while the crane was working and its positive requirement of the contractor that power be maintained in the line while the work was being done.

Defendant contends that this was more than passive or secondary negligence, or the mere failure to perform a positive duty imposed by law.

This case differs, as defendant contends, from the two Connecticut cases which are relied on by plaintiff as establishing the right to indemnity in favor of the one guilty only of passive negligence. Our question is whether the degree of difference is sufficient to apply the general rule or whether we should include the case in the class to which the exception applies.

Considering the history and purpose of the exception, and the nature of the narrow class of cases to which it has been applied, it would appear more logical to apply the general rule of no contribution here.

■ Under the testimony before the jury this court must find that Case, as well as Jarvis, was negligent.

Case must have known of the probability of serious injury or death if the crane was used in the restricted space available close to the live wires carrying 11,000 volts. The high degree of care required by the known danger was not exercised by Case when it failed to order the current cut off and when it required Canning to have the work done without interrupting Case's manufacturing operations, dependent on a continued flow of electricity in the wires.

"The defendant had retained control of the premises. The jury could have found that it was required to at least attempt to kill the current in the high tension wires for the short period of the plaintiffs' activities. They could also have found that the defendant not only did not do this but required the contractor to do his work without interrupting that of the defendant by shutting off the power." Reboni v. Case Brothers, Inc., 1951, 137 Conn. 501, 505, 78 A.2d 887.

In neither the Preferred Accident nor the Fidelity & Casualty cases, supra, was there any such positive requirement that the other tort-feasor work under conditions of danger. There was merely the physical condition of the premises which made it possible for the delivery men to endanger the public by leaving the cellar doors on the sidewalk open and unguarded, unbeknownst to the owner.

We must conclude that the case at bar falls rather in the general classification of concurrent negligence by two active tort-feasors than in the restricted exception created by the cellar door cases.

Here we have positive knowledge on the part of Case of the current in the wires while the work was going on, the failure of Case to take steps to have it turned off, and Case's requirement that it be left on for the benefit of Case's manufacturing operations.

It is true that the last link in the chain of causation of the accident was the negligence of Taggart as agent of Jarvis in swinging the crane boom close to the wire and that Jarvis was in immediate control of the crane. In view of Case's instructions to the contractor that the current should not be turned off, however, Jarvis cannot be said to have been in exclusive control of the premises at the time, a fac-

tor which appears important in the Connecticut cases.

If we had a doctrine of comparative negligence, perhaps we should hold Jarvis' fault greater than that of Case.

It is hardly greater to such a degree, however, that we should require Jarvis in fairness to carry the whole burden of loss. Nor does the definition of the doctrine by the Connecticut Courts allow us to do so, for Case does not appear to have been merely passive in the sense in which the term has been used by the Court.

The defenses of statute of limitations, and the bar of the Workmen's Compensation Act are of doubtful validity, but in the view taken of the main question need not be considered.

Judgment may be entered for the defendant.